Mr, Justice Washington
delivered, the opinion of the Court.
This is an appeal from a decree in equity of the Circuit Court for the district of Kentucky. Edwards and wife, the plaintiffs in the Court below, filed their bill in that Court, on the 8th of June, 1816, in which they charge, that the female plaintiff, before her coverture, advanced, by way of loan, to James Hughes, her brother, the sum of £770 2s. 4d., for which he gaye his bond, bearing date the 10th of September, 1793, with condition to pay the same on the 12th of the same month; and for securing the said debt, she took from the said *491 Hughes a mortgage upon sundry lots, situate in Lexington,, in Kentucky, which are particularly described. It further charges, that the debt still remains due and unpaid and that the defendant, Hughes, subsequent to the execution of the mortgage deed, had sold part of the mortgaged premises to Gabriel Tandy, David and James M'Gowan, Robert Wilson, Samuel Patterson, James Wilson and John Anderson, John Parker, and William Bowman, all of whom are alleged to have purchased with legal notice of the plaintiff’s lien on the said property, the deed having been duly recorded in the County Court of Fayette, agreeably to law. The mortgagor, and the purchasers under him, all of whom are stated to be citizens of Kentucky, are prayed to be made defendants; and the prayer of the bill is, that the defendants may be decreed to pay the aforesaid debt, with interest, &c.; and on failure, that the equity of redemption of the defendants be foreclosed, and-'the-mortgaged property decreed to be sold, to satisfy the said debt, &c. The bill alleges the plaintiffs:to beHdiens, and subjects of the King of Great Britain. The deed of mortgage, dated the 14th of February, 1794, which (as well as the bond referred to in it) is made an exhibit, contains a defeasance, that the mortgagor should pay tlie said sum of £770 2s. 4d., with lafwul interest thereon, according to the condition of the bond recited in it. It was duly proved and recorded in the County Court of Fayette, on the 11th of March, 1794.
Tandy and Patterson severally answered this bill, each of them admitting himself to be ib po&- *492 ¡session of certain parts of the mortgaged premises,. under a bona fide conveyance, for valuable consideration paid, from the mortgagor, or others claiming under him, and without notice of the mortgage, other than the constructive notice given by the record of the same. They allege the con-: tinued possession of the mortgaged premises, from the date of the mortgage, by the said Hughes, or those claiming by purchase under him ; and rely, upon the length of time, and uninterrupted possession, as grounds for presuming that the debt has been paid, or released, in bar of the relief sought.
M'Gowan, and Hughes, the mortgagor, having died pending the suit, the guardians ad litem of their heirs and representatives severally answered, not admitting any of the charges in the bill, and relying upon the presumption of payment, or a release of the debt, from length of time.
The bill was dismissed, as to all the defendants, except Hughes’ heirs, Patterson and Tandy, upon their answers coming in ; and after one or more interlocutory decrees, the Court pronounced a final decree of foreclosure, as to the above defendants; and in case the balance found to be due by the report of the commissioner, should not be paid by a certain day, a sale of the mortgaged property, in which the equity of redemption was foreclosed, was decreed..
It was admitted, by the parties, that the defendants had made lasting and valuable improvements on the mortgaged property claimed by them ; and that the female plaintiff, shortly after the date of *493 the mortgage, left the United States, and that neither she, nor her husband, has been since within the United States.
Effect of the impossiblecondtition contained in the mortgage deed.
Amongst the exhibils filed in the cause, are two letters froni James Hughes, the mortgagor, to the female plaintiff, the one bearing date the 24th of February, 1803, and the other the 17th of December, 1808 ; in the former of which, he recog-nises distinctly the existence of the mortgage, and in both, promises to make remittances as soon as it should be in his power.
The counsel for the appellants insist upon the following Objections:
1. That the mortgage deed is a void instrument, the defeasance being to pay the money on the day it became due by the bond, viz. on the 12th of September, 1793, which was impossible, that day having already passed.
2. The plaintiffs, being aliens, by their own showing, cannot hold lands in Kentucky, and, therefore, cannot maintain a bill to foreclose this mortgage.
3. The plaintiffs are barred of their right to foreclose, by length o.f time.
4. That the mortgaged property ought not to have been made liable to the payment of this debt, beyond its unimproved value.
1. The first objection is Avell founded in point of fact; but as to its legal consequences, it was in a great measure answered by the concession which the learned counsel, who urged it, was constrained tb make. He admitted the law to be, ás it unquestionably is, that if a deed for land is to be *494 made void, by the happening of a subsequent condition, the performance of which is impossible at the time the deed is made, the condition only is void, and the estate of the grantee becomes absolute. But the use which he endeavours to make of the. objection, was to turn the respondents out of the Court of equity, and to leave them to their, legal remedy, by ejectment, to recover the possession of the granted premises, in which it was supposed they might be successfully encountered by the statute of limitations. But in what respect the situation of a grantee in a deed without a de-feasance, but which was intended by the parties to operate only as a security, differs from that of an ordinary mortgagee, in respect to jurisdiction, and the act of limitations, is not perceived by the Court. The latter may pursue his legal remedy, by ejectment, and he may, at the same time, file his bill, for the purpose of foreclosing the mortgagor of his equity of redemption. The objects of the two suits are totally distinct; and it is no objection to the remedy sought in equity, that the plaintiff has another remedy which he may pursue at law.. In the one,.he seeks to obtain possession of the mortgaged premises ; and in the other, to compel the mortgagor to pay the debt, for the security of which the mortgaged property was pledged. Whether the defendant could avail himself of the act of limitations in the former case, whilst the equitable remedy of the plaintiff is subsisting, is a question which need not be decided in the present case, as the parties are now before a Court of; equity. The effect which length of time may have upon *495 the plaintiff’s rights in that Court, will be considered under another heach
An absolute deed considered as a mortgage, in equity, where it is intended merely as security.
The principles here laid down, are not less applicable to the case of an absolute deed, which is intended by the parties to operate as a security for a debt, than they are to that of a common mortgage. A Court of equity looks at the real object and intention of the conveyances; and when in equity, where it is intended merely the grantor applies to redeem, upon an allegation that the deed was intended as a security for a debt, that Court treats it precisely as it would an ordinary mortgage , provided the truth of the allegation is made out by the evidence. So, too, the grantée in such a deed, may treat it as a mortgage, and, acknowledging it to be such,’may apply*to a Court of Equity to foreclose the equity of. redemption, which will be decreed, in like manner as if an unexceptionable defeasance were attached to the deed. That Court directs its attention to the real objectof the deed, and the intention of the parties, and will compel a fulfilment of both. Now what was the object of the present deed ?. It is admitted by all the .parties to this cause, that it was to Secure a debt due by James Hughes, the grantor, to Martha Hughes, the grantee ; and it is apparent, from the instrument itself, exclusive of the-condition, that the debt to be secured was- that of which the bond recited in the deed was the evidence, which was payable on the 12th day of Sep- ’ tember, 1793, with interest from the dale of the bond. This, then, being the contract of the parties, it ought to be carried-into execution} unless *496 there should b~ objectiQns to such a decree, other than the one which `has been just disposed of.
Alienage of the mortgagee.
2. The, next objection relied upon, is the alien age of the respondents. This objection woul not, we think, avail the appellants, even if tb object of this suit was the recovery of the Ian itself, since the `remedies, as well a~ the rights, o these aliens, are completely protected by the treat ~f 1794, which declares "that British subjects, who now hold lands in the territories of the~ Uni ted States, &c. shall continue to hold them, according to the nature and tenure of their respec-ti've estates and titles therein; and may grant, sell, or devise the same to whom theyplease,in like manner as if they were natives; an'd that neither they, nor their heirs or assigns, ~ha1l, so far as may respect the said lands, and thelegal remedies incident thereto, be regarded as aliens." In the cases of Harden v. Fisher, (1 Wheat. Rep. 300.) and Orr v. Hodgson, (4 Wheat. Rep. 463.) it was desided that; under this treaty, it was no~ necessary for the alien to show that~ he was in'thèac-tual possession `or seisin of the land, at the time of the treaty; because' the `tre&ty applies to the titlö, whatever that,may be, and gives it the same legal validity~as if the parties were citizens.- NOw, it is unquestionable, that at the time this treaty was made, ,the femalQ plaintiff' `was entitled to assert a Iégal'claim to th~ possession of this land, or to foreclose the equity of redemption, unless the debt with which it was `charged was paid, in which case, `equity would have cqnsidered her as a mere trustee for the mort~a~or..
Lapse of time, its effects upon the rights of. mortgagor and mortgagee, and of purchasers claiming under the former.
Bat the objection is deprived of all its weight, and would be so, independent of the treaty, in a case where the mortgagee, instead of seeking to obtain possession of the land, prays to have his debt paid, and the property pledged for its security sold, for the purpose of raising the money. Under this aspect, the. demand is, in reality, a personal one, the debt being considered as the principal, and the land merely as an incident; and, consequently, the alienage of the mortgagee, if he be a friend, can; upon no principle of law or equity, be urged against him.
3. It is objected, in the third place, that the respondents are barred of their right to foreclose, by length of time. It is'not alleged or pretended, that there is any statute of limitations in the State, of Kentucky, which bars the right of foreclosure or redemption, and the counsel for the appellants placed this point entirely upon those general principles which have been adopted by Courts of equity, in relation to this subject. In the case of a mortgagor coming to redeem, that Court has, by analogy to the statute of limitations, which takes away the right of entry of. the plaintiff, after twenty years adverse possession, fixed upon that as the period, after forfeiture, and possession taken by the mortgagee, no interest having been paid in the mean time, and no circumstances ta account for the neglect appearing, beyond which a right of redemption shall not be favoured. In respect to the mortgagee, who is seeking to foreclose the equity of redemption, the general rule is, that where the mortgagor has been permitted *498 to retain. possession, the mortgage will, after a length of time, be presumed to have been discharged, by payment of the money, or a release, unless circumstances can be shown sufficiently strong to repel the presumption, as, payment of interest, a -promise to pay, an acknowledgment by the mortgagor that the mortgage is still existing, and the like. . Now, this case seems to be strictly within the terms of this rule. The two letters from the-mortgagor to the female plaintiff in 1803 and 1808, admit that the mortgage was then subsisting, that the debt was unpaid^ and. they contain promises to pay it when it should be in the power of the writer. In addition to these circumstances, credits were endorsed on the bond, for payments acknowledged to have been made, which, though blank, the Court below ascertained, to have been made on the 15th of January, 1798, the 15th of May, 1803, and the 2d of August, 1808. The mortgagor, then, cannot rely upon length of time to warrant a presumption .that this debt has been paid, or released,-the circumstances above detailed having occurred from 8 to 13 years only prior to the institution óf this suit..
But it is insisted that, although these acknowledgments may be sufficient to ..deprive the mortgagor óf a right to set up the presumption of payment or release, they cannot affect the other defendants,, who purchased from him parts, of the mortgaged premises, for a valuable consideration. The conclusive answer to this argument is, that they were purchasers, with notice of this incum-brance. It must be admitted, that it was but con *499 structive notice; but for every purpose essential to the protection of the mortgagee against the effect of those alienations, it is equivalent to a direct notice, and such is unquestionably the design of the registration laws of Kentucky. A purchaser, with notice, can be in no better situation than the person froth whom he derives his title, and is bound by the same equity which would affect his rights. The.mortgagor, after forfeiture, has no title at law, and none in equity, but to redeem upon the terras of paying the de t and interest: His conveyance to a purchas r with notice, passes nothing but an equity of redemption, and the latter can, no more than the mortgagor, assert that equity against the mortgagee, without paying the debt, or showing that it has been paid or released, -or that there are circumstances in the case, sufficient to warrant the presumption of those facts, or one of them. The Court is, therefore, of opinion that this objection cannot be sustained by either of the appellants.
Improvement made upon the mortgaged.
4. The last objection is¿ that the mortgaged property ought not to have been made liable to the payment of this debt, beyond its unimproved value. The object of this suit is, to recover, a debt, and to have the property pledged for its security sold, for the purpose of paying it. The debt, as was before observed, is the principal, and the land is only as a collateral security for the payment of it. The mortgagee seeks not to obtain the possession <of the land, and to deprive the mortgagor or the purchaser of the improvements they have made upon it; and even if he did, *500 ' the question would not be materially changed. If by means of these improvements the value of the land has been increased, the mortgagor, or . purchasers, are pérmiited to enjoy all the benefit of' such increase, by paying the debt charged upon' the land. If he will not do this, but submits rather to a sale of the property, he has all the benefit of its increased value, by receiving the overplus raised by the sale, after thé debt is discharged. His improvements were made upon property which he knew was pledged for the payment of this debt, and he made them solely with a view to his own interest. The land was in reality his own, subject only to the lien; so much his oHvn,. that he is not accountable to the mortgagee " for the rents and profits received by him during the continuance of his possession, even although the land, when sold, should be insurfi-cieiit to pay the .debt. Neither- is the purchaser accountable for any part of the debt, beyond the amouiit for which the land may be sold, although it should have been deteriorated by waste, dilapidation, or other mismanagement. The claim, therefore, of a purchaser with notice, to have the value of the improvements which may have been made from the fruits of the property itself deducted from the price at which the property may be sold,; seems to the Court too unreasonable to admit of a serious argument in its support. No case was cited, nor has this Court met with one, which affords it the slightest countenance. We must, therefore, overrule this objection.
Apportionment of the debt among the different purchasers of the mortgaged property.
Before concluding this opinion, it may be pro *501 per to notice a point which was made by the conn-sel for the appellants, although it was not much insisted upon; it was, that the balance due upon this mortgage ought to have been apportioned upon all the purchasers from Hughes. The bill was properly dismissed as to all the defendants, except the heirs and representatives of Hughes, Tandy, and Patterson, upon their answers, denying the equity of the bill; and from these decrees no appeal Was taken. As to Tandy and Patterson, who acknowledge themselves to be purchasers with notice, they stand precisely in the situation jof the mortgagor, and the mortgagees have nothing to do with their relative rights to contribution amongst themselves. They are entitled to be paid the debt due to them, and, to call for a foreclosure and sale of all the mortgaged property, whether It be in the. possession of the mortgagor, or of others to whom he has sold it. If either of these defendants should pay more than his proportion of. the debt, according to the relative value of the property they possess, that is a matter to be settled amongst themselves. But it would be most unreasonable to force the mortgagees, into the delay and expense incident to the . adjustment of those differences between persons with whom they have,no concern. The conveyances by the mortgagor to theni are void, as to the mortgagees, against whom they have no right, except that of redeeming, upon payment of the mortgage debt and interest.
Decree affirmed with costs-